[Docket No. 41]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHRISTINE MEALE,<br><br>    Plaintiff,<br><br>        v.<br><br>CITY OF EGG HARBOR CITY, POLICE OFFICER STEVEN HADLEY, and POLICE OFFICER CHRISTOPHER HOFFMAN, et al.,<br><br>    Defendants. | Civil No. 14-5860 (RMB/JS)<br><br>**OPINION** |

APPEARANCES:

Jennifer Ann Bonjean
Bonjean Law Group PLLC
1000 Dean Street, Suite 345
Brooklyn, NY 11238
    *Attorney for Plaintiff*

Sarir Zandi Silver
Vincent M. Avery
Gordon & Rees LLP
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932

Steven M. Berlin
Gordon & Rees LLP
One Battery Park Plaza, 28th Floor
New York, NY 10004
    *Attorneys for Defendants City of Egg Harbor City and*
    *Officer Christopher Hoffman*

John Michael Bowens
Cynthia Lynn Flanagan
Thomas Joseph Cotton
Schenck, Price, Smith & King LLP
220 Park Avenue
P.O. Box 991

Florham Park, NJ 07932
    *Attorneys for Defendant Officer Steven Hadley*

**BUMB**, United States District Judge:

This matter comes before the Court upon the motion to amend the complaint filed by Plaintiff Christine Meale [Docket No. 41]. For the reasons set forth below, the Plaintiff's motion shall be granted, in part, and denied, in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from a January 15, 2013 traffic stop, which led to the Plaintiff's arrest by Egg Harbor City Police Officers Steven Hadley ("Hadley") and Christopher Hoffman ("Hoffman") for possession of controlled dangerous substances. The Plaintiff alleges after her arrest, she was subjected to five months of "sexual assault and emotional torment at the hands of disgraced Egg Harbor City police officer Steven Hadley." Proposed Amended Complaint ("Am. Compl.") ¶¶ 1-2 [Docket No. 42].

On January 15, 2013, the Plaintiff was driving with a male acquaintance when she was stopped by Defendant Hoffman. Id. at ¶ 18.[1] Defendant Hoffman asked the Plaintiff and the male passenger to exit the car. Id. at ¶ 19. Hoffman handcuffed the

---

[1] The Court will accept the Plaintiff's well-pled allegations as true for purposes of this motion to amend, as the Court must evaluate the amended complaint under the same standard as a Rule 12(b)(6) motion to dismiss. See Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

2

male passenger.  Id. at ¶ 20.  The Plaintiff alleges that Defendant Hoffman then proceeded to conduct a nonconsensual "intrusive and unlawful search" of her that included fondling her and unbuttoning and pulling her pants partially down.  Id. at ¶¶ 22-23, 25.  Hoffman then telephoned Hadley and allegedly informed him "in sum and substance that he had [] detained a woman who Hadley could sexually abuse."  Id. at ¶ 24.

After Defendant Hadley arrived at the scene, he searched the Plaintiff's purse and vehicle without her consent, where he discovered a small bag of marijuana.  Id. at ¶ 26.  The two officers then transported the Plaintiff to the police department.  While in Hoffman's police car, Hoffman told the Plaintiff that "if she 'worked with them,' she could avoid being charged."  Id. at ¶ 28.  Hadley then stated that so long as she "cooperated" with him, she would not be in any trouble.  Id. at ¶ 29.  At the police station, while in the same room as Hoffman, Hadley allegedly told the Plaintiff "you know, this will all go away if you just give me a little."  Id. at ¶ 34.  The Plaintiff was then taken to Defendant Hadley's office.  Once alone, Defendant Hadley told the Plaintiff "calm down babe, we can work something out" and then demanded that she lift up her shirt.  Id. at ¶¶ 36-38.  Although she complied, the Plaintiff also begged to instead become an informant.  Id. at ¶ 37.

3

Defendant Hadley informed the Plaintiff that she could act as a confidential informant in exchange for having any potential criminal drug charges against her dropped and the Plaintiff agreed. Id. at ¶¶ 2, 38, 41-43. Hadley, however, was hesitant to formalize the confidential informant relationship with the Plaintiff and, instead, coerced her into engaging in sexual acts with him and sexually abused her. Id. at ¶¶ 4, 45-47. The Plaintiff reluctantly acquiesced, fearful that she would go to prison where she would be separated from her husband and young daughter. Id. at ¶ 48. This pattern of sexual abuse continued for several months until approximately May 2013.

In approximately April 2013, the Atlantic County Prosecutor's Office began an investigation into allegations against Defendant Hadley by various women who claimed that he had previously arrested and coerced them into sexual relationships. Id. at ¶ 57. Also in April 2013, the Prosecutor's Office informed the Egg Harbor City Police Chief of the investigation and the allegations against Hadley, including those made by the Plaintiff. Id. at ¶ 58. In July 2013, the Plaintiff met with the Prosecutor's Office to discuss her allegations of sexual abuse and misconduct against Hadley. Id. at ¶ 61.[2] At this time, according to the Plaintiff's Proposed

---

[2] While the Plaintiff alleges that she spoke with the Prosecutor's Office in July 2013, she also alleges that in April

4

Amended Complaint, she "was still defending against drug charges initiated by Defendants Hadley and Hoffman." Id. Eventually, the Plaintiff pled guilty to possession of controlled dangerous substances. Id. at ¶ 56.

On September 24, 2013, Defendant Hadley was criminally charged in connection with official misconduct related to the allegations of sexual abuse made by the Plaintiff and three other women. Id. at ¶¶ 62-63.

On September 22, 2014, based largely on the above allegations, the Plaintiff filed a complaint (the "Original Complaint") against the City of Egg Harbor City (the "City"), Hadley, and Hoffman, as well as unknown Egg Harbor City police officers [Docket No. 1]. In the Original Complaint, the Plaintiff asserted claims under Section 1983 of the Civil Rights Act for alleged Fourth, Eighth, and Fourteenth Amendment violations against Defendants Hoffman, Hadley, and unknown police officers (Count I), as well as a Section 1983 Monell claim against the City (Count II). The Plaintiff also asserted state law tort claims against Defendants Hoffman, Hadley, and

---

2013 the Prosecutor's Office informed the Egg Harbor City police chief of the allegations against Hadley, "including those allegations made by Plaintiff." Am. Compl. ¶¶ 58, 61. Based upon the Proposed Amended Complaint, it is unclear when the Plaintiff first made any allegations against Defendant Hadley known to the Atlantic County Prosecutor's Office. Regardless of the date, the Court's analysis remains the same.

5

unknown officers, including, inter alia, assault, battery, trespass, false arrest, conspiracy, slander, negligent infliction of emotional distress, and intentional infliction of emotional distress (Count III).  Finally, the Plaintiff asserted a conspiracy to violate civil rights claim under Section 1985 of the Civil Rights Act against all Defendants (Count IV) and a punitive damages claim against Defendants Hoffman, Hadley, and unknown officers (Count V).

   The Defendants moved to dismiss Counts III, IV, and V of the Original Complaint [Docket Nos. 22, 24].  On June 23, 2015, the Court granted the Defendants' motions to dismiss, but permitted the Plaintiff to seek leave to file an amended complaint within twenty-one days.  Opinion ("Op.") [Docket No. 38].  In its Opinion, the Court identified certain pleading deficiencies and directed the Plaintiff to remedy these deficiencies in her proposed amended complaint and motion to amend.

   Specifically, the Court dismissed the state law tort claims (Count III) because the Plaintiff had not sufficiently alleged compliance, substantial or otherwise, with the notice requirements of the New Jersey Tort Claims Act ("NJTCA").  Under the NJTCA, a plaintiff bringing a claim against a public entity or public employee must give the relevant public entity notice of the claim within ninety days of the accrual of the cause of

6

action.  N.J.S.A. § 59:8-8.  A plaintiff who fails to do so is "forever barred" from recovering against a public entity or employee.  Id.  The Court, however, granted the Plaintiff an opportunity to file a motion to amend her complaint to include allegations of substantial compliance with the NJTCA's notice requirements and delayed accrual of her causes of action.  Op. at 18.

The Court also dismissed the Section 1985 conspiracy claim (Count IV) because the Plaintiff's well-pled allegations were insufficient "to demonstrate the requisite class-based animus against women[.]"  Op. at 20.  The Plaintiff was also permitted to cure this deficiency via leave to amend her complaint.

On July 15, 2015, the Plaintiff filed a motion to amend her complaint and a Proposed Amended Complaint [Docket Nos. 41, 42]. The Defendants have opposed the motion [Docket Nos. 43, 44].

## II.  LEGAL STANDARD

Motions to amend are governed by Federal Rule of Civil Procedure 15(a), which states in relevant part:

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

7

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." Foman v. Davis, 371 U.S. 178, 182 (1962). Leave to amend generally is "freely given." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (quoting Foman, 371 U.S. at 182). However, a district court has discretion to deny leave to amend "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Id.

"Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014) (citing Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010)). Therefore, in determining whether an amendment is futile, this Court must apply "the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)." Travelers, 594 F.3d at 243 (internal quotations and modifications omitted) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)).

Therefore, the Plaintiff's motion to amend should only be granted if the Proposed Amended Complaint "contain[s] sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.

8

662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); accord Budhun, 765 F.3d at 259.

## III. ANALYSIS

### A. New Jersey Tort Claims Act Notice

The NJTCA states: "No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. § 59:8-3. Additionally, the NJTCA explains that a "claimant shall be forever barred from recovering against a public entity or public employee if: (a) The claimant failed to file the claim with the public entity within 90 days of accrual of the claim . . . ." N.J.S.A. § 59:8-8. Under "extraordinary circumstances," a claimant may seek a court's permission to file a late notice of claim "at any time within one year" of the cause of action's accrual. N.J.S.A. § 59:8-9. The Court has already ruled that the NJTCA applies to the Plaintiff's state law tort claims against the Defendants. See generally Op. at 6-18.

The Defendants previously moved to dismiss Count III of the Original Complaint, which sets forth various state law tort claims against the Defendants, for failure to comply with the notice requirements of the NJTCA. In opposition, the Plaintiff argued that she "substantially complied" with the NJTCA's notice requirements and that there is an outstanding issue as to when,

9

exactly, her state law tort claims accrued.[3]  The Court rejected both arguments, but, nevertheless, granted the Plaintiff an opportunity to seek leave to amend her complaint to set forth allegations supporting these two theories.  Op. at 18.

### i. Delayed Accrual

As Defendant Hadley notes, the Plaintiff's Motion to Amend does not address the question of delayed accrual of her causes of action.  See Hadley Opposition Brief at 6 [Docket No. 43]. The Motion to Amend, in fact, concedes that the Plaintiff seeks only to include additional facts to establish substantial compliance with the NJTCA's notice requirements and class-based discriminatory animus as required for the Plaintiff's conspiracy claim under Section 1985(3), which is addressed infra.  Motion to Amend at 1.  Therefore, this Court continues to reject this argument for the reasons set forth in its June 23, 2015 Opinion. See Op. at 16-18.

Based on the allegations in the Proposed Amended Complaint, the Plaintiff's claims accrued no later than May 2013.  Am. Compl. ¶¶ 1, 44-49.  As such, the 90-day window during which the

---

[3] The Plaintiff also argued that she is excused from complying with the NJTCA's notice requirements because, under the NJTCA, a public employee is not immune from liability where he engaged in conduct that constituted a crime or willful misconduct. N.J.S.A. § 59:3-14.  The Court rejected this argument outright and, as such, this issue is not before the Court upon the Plaintiff's Motion to Amend.  See Op. at 10-11.

Plaintiff could have filed a notice of claim with the City expired, at the very latest, at the end of August 2013 or early September 2013.  Had extraordinary circumstances presented themselves, the Plaintiff could have sought leave of a court to file late notice by May 2014.  She did not do so.  The Plaintiff did not file the instant lawsuit until September 22, 2014.  Thus, unless the Plaintiff can allege facts, viewed in the light most favorable to her, to establish substantial compliance with the NJTCA's notice requirements, leave to amend the complaint as to Count III would be futile.

    **ii. <u>Substantial Compliance</u>**

While no formal notice was provided to the City regarding the Plaintiff's claims against the Defendants, the Plaintiff contends that her cooperation with a criminal investigation into Defendant Hadley's misconduct constitutes "substantial compliance" with the NJTCA's notice requirements.  This is the same argument that the Court flatly rejected in its June 23, 2015 Opinion.

The Plaintiff's additional allegations in support of this theory are inadequate to establish substantial compliance with the notice requirements of the NJTCA.  "Although the doctrine of substantial compliance has occasionally been applied in the tort claims context, it has been limited carefully to those situations in which notice, although both timely and in writing,

11

had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." D.D. v. University of Medicine and Dentistry of New Jersey, 213 N.J. 130, 159 (2013).

The Plaintiff's argument that she substantially complied with the NJTCA's notice requirements even though she "did not meet the technical requirements of the Act by sending a 'writing' to the City" misses the point.  Motion to Amend at 2. A "writing" is required not just for actual compliance, but also for substantial compliance.  The Supreme Court of New Jersey, observing that "it is elementary that, at a very minimum, a notice of claim under the Act must be in writing," recently held that "oral notice, even where it contains the elements required by N.J.S.A. 59:8-4, does not constitute substantial compliance." D.D., 213 N.J. at 159 (internal quotations and modifications omitted) (quoting Velez v. City of Jersey City, 358 N.J. Super. 224, 238 (App. Div. 2003)).

The additional allegations set forth in the Proposed Amended Complaint do not cure the deficiencies previously identified by this Court.  First, the Plaintiff concedes that she never provided a writing to the City regarding her claims against the Defendants.  Second, the Plaintiff does not allege that her conversation with the Prosecutor's Office contained the

12

elements required by N.J.S.A. § 59:8-4.[4] In fact, the only allegation regarding her conversation with the Prosecutor's Office merely states that "[i]n July, 2013, Plaintiff sat down with Atlantic County Prosecutors to shore [sic] how Defendant Hadley had abused her." Am. Compl. ¶ 61.

The only case cited by the Plaintiff in her Motion to Amend to support her substantial compliance argument is Ewing v. Cumberland County, 2015 WL 1384374 (D.N.J. Mar. 25, 2015). The Court, however, has already explained at length why her reliance on Ewing is both misplaced and unavailing. Op. at 14. In Ewing, the plaintiff's attorney provided a written letter to the prison warden that "provided essentially the same information required under N.J.S.A. § 59:8-4." Id. at *21. For these reasons, the Ewing court found that the letter served the purposes of the NJTCA's notice requirements. Id. As

---

[4] N.J.S.A. § 59:8-4 requires a laim to include: "(a) The name and post office address of the claimant; (b) The post-office address to which the person presenting the claim desires notices to be sent; (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted; (d) A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim; (e) The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and (f) The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed."

aforementioned, nothing in the Proposed Amended Complaint alleges that the Plaintiff conveyed the information required by N.J.S.A. § 59:8-4 to the Prosecutor's Office, let alone that she did so in writing.

At most, the Plaintiff made a mere oral statement in support of possible criminal charges against Defendant Hadley. This Court holds that this is insufficient to constitute substantial compliance with the NJTCA's notice requirements. D.D., 213 N.J. at 159; Ingram v. Twp. of Deptford, 911 F. Supp. 2d 289, 295 (D.N.J. 2012). Mere knowledge of possible misconduct on the part of Defendant Hadley is inadequate to put the Defendants on notice of her state law tort claims as required by the NJTCA. See Ingram, 911 F. Supp. 2d at 295.

The deficiencies in the Plaintiff's alleged notice of claim go far beyond the "technical deficiencies" in notice that the equitable doctrine of substantial compliance was designed to remedy. See D.D., 213 N.J. at 159. Under these circumstances, to permit the Plaintiff to pursue her state law tort claims against the Defendants would be to eviscerate the NJTCA's notice of claim requirements altogether. This Court declines to do so.

For the foregoing reasons, the Court holds that Count III of the Plaintiff's Proposed Amended Complaint does not state a claim upon which relief may be granted. The Motion to Amend as to Count III is denied as futile.

### B. Conspiracy Under 28 U.S.C. § 1985(3)

To state a claim for conspiracy to deprive the Plaintiff of her civil rights under Section 1985(3), the Plaintiff must plead four essential elements:

(1) a conspiracy;

(2) motivat[ion] by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons [of] the equal protection of the laws;

(3) an act in furtherance of the conspiracy; and

(4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

Livingston v. Borough of Edgewood, 430 F. App'x 172, 178 (3d Cir. 2011) (quoting Lake, 112 F.3d at 685).  The Court previously held that, "read generously," the allegations in the Original Complaint were sufficient to plead a conspiracy.  Op. at 20.  Notably absent, however, were any allegations regarding class-based animus against women.  In the Proposed Amended Complaint, the Plaintiff alleges additional facts to support her position that Hadley and Hoffman were motivated by class-based animus against women.  Am. Compl. ¶¶ 78-83.

Women are clearly identifiable as a class for purposes of this analysis.  McArdle v. Hufnagel, 588 F. App'x 118, 121 (3d Cir. 2014) ("Members of a protected class under § 1985(3) have at least one of certain 'immutable characteristics.'  These include race, gender, national origin, and mental handicap.")

15

(emphasis added) (citing Lake, 112 F.3d at 687).  The question, however, is whether the Plaintiff has sufficiently alleged that Defendants Hadley and Hoffman were motivated by class-based animus against women when they targeted her for sexual abuse.

The Plaintiff has alleged that she was targeted by Defendants Hadley and Hoffman for sexual harassment and abuse because she was a woman.  Am. Compl. ¶ 80-83.  She also alleges that Defendants Hadley and Hoffman had previously targeted other women for such abuse, but that they did not sexually abuse or harass men that they stopped or arrested.  Id. at ¶¶ 81-82.  For example, the Plaintiff alleges that the male passenger in her car during the January 15, 2013 traffic stop was ordered out of the vehicle and handcuffed without issue, while she was forced to unbutton her pants in public and was fondled by Defendant Hoffman.  Id. at ¶ 19-20, 22-23.

To establish a gender discrimination claim, a plaintiff must "prove adverse action taken against her on account of her gender, when compared with the treatment of men." Downey v. Coal. Against Rape & Abuse, Inc., 143 F. Supp. 2d 423, 452 n. 7 (D.N.J. 2001) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800 (1973)); see also Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990) ("To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal

16

protection, plaintiffs must prove the existence of purposeful discrimination.  They must demonstrate that they received different treatment from that received by other individuals similarly situated.  Specifically to prove sexual discrimination, a plaintiff must show that any disparate treatment was based upon her gender.") (internal quotations, citations, and modifications omitted).

At this stage, the Plaintiff has alleged sufficient facts to support her Section 1985(3) conspiracy claim.  For these reasons, the Plaintiff's Motion to Amend is granted as to Count IV of the complaint.

## IV. CONCLUSION

For the reasons set forth above, the Plaintiff's Motion to Amend is GRANTED, in part, and DENIED, in part.  Specifically, the Motion to Amend is GRANTED as to Count IV (conspiracy under Section 1985(3)) and DENIED as to Count III (state law tort claims).  Count III is DISMISSED with prejudice due to the Plaintiff's failure to comply with the NJTCA's notice of claim requirements.  An appropriate Order shall issue on this date.

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
UNITED STATES DISTRICT JUDGE

Dated: February 19, 2016